UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEBORAH WEBER, <br><br> Plaintiff, <br><br> v. <br><br> QUEST DIAGNOSTICS OF PENNSYLVANIA, INC., BUFFALO BEACON CORPORATION, and NATHANIAL C. WEBSTER, M.D., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 1:20-cv-00324 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**OPINION AND ORDER**
**GRANTING PLAINTIFF'S MOTION TO REMAND CASE AND PENDING**
**MOTIONS TO DISMISS TO STATE COURT**
(Docs. 12, 13, & 19)

Plaintiff Deborah Weber brings this suit against Defendants Quest Diagnostics of Pennsylvania, Inc., ("Quest"), Buffalo Beacon Corporation ("Beacon Center"), and Nathanial C. Webster, M.D. (collectively, "Defendants"), arising out of two alleged false positive urine tests that Defendants submitted as part of Plaintiff's participation in the Clarence Town Drug Court program ("Drug Court") after her arrest for misdemeanor driving while intoxicated ("DWI"). Plaintiff originally commenced this lawsuit in New York Supreme Court, Erie County. Quest removed the action to federal court on March 13, 2020.

Pending before the court are three motions: Defendant Quest's April 8, 2020 motion to dismiss the First Amended Complaint ("FAC") pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim (Doc. 12); Plaintiff's April 13, 2020 cross-motion to remand to New York Supreme Court (Doc. 13); and Defendants Beacon Center's and Dr. Webster's April 28, 2020 motion to dismiss the FAC pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 19.) The parties completed briefing on May 19, 2020, at which time the court took

the pending motions under advisement.

Plaintiff is represented by Gary P. Bluestein, Esq., Hadley L. Matarazzo, Esq., Justin John Andreozzi, Esq., Randall P. Andreozzi, Esq., and Stephen G. Schwarz, Esq. Quest is represented by Peter John Glennon, Esq. and D. Faye Caldwell, Esq. Beacon Center and Dr. Webster are represented by Sanjeev Devabhakthuni, Esq. and Sharyn G. Rogers, Esq.

## I.    Procedural Background.

On February 3, 2020, Plaintiff filed a Complaint in New York Supreme Court, Erie County, which she served on Defendants on February 13, 2020. In her original Complaint, Plaintiff sought to bring class action claims under N.Y. Gen. Bus. Law § 349 on behalf of "[a]ll New York residents and health insurers for New York residents who were billed for testing by defendant Quest under Test Code 20776 and were charged for confirmation testing that did not in fact occur." (Doc. 1-1 at 24, ¶ 113.)

On March 13, 2020, Quest removed the action to federal court under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because Quest is not a citizen of New York; the proposed class exceeded one hundred individuals; and Quest conducted more than 60,000 tests under Test Code 20776 for New York residents at an average charge exceeding $90.00 per test, rendering the total amount in controversy over $5.4 million. Following removal, Plaintiff informed Quest she intended to amend her Complaint to remove the class action allegations and requested that Quest consent to remand the case to New York Supreme Court. When Quest did not agree to a remand, Plaintiff advised Quest that she would file the FAC and move for remand.

On April 7, 2020, Plaintiff amended her Complaint as a matter of right[1] and

---

[1] Pursuant to Fed. R. Civ. P. 15(a)(1)(B), "if the pleading is one to which a responsive pleading is required," a party may amend its pleading as a matter of right within twenty-one days after service of a responsive pleading or after service of a Rule 12(b), (e), or (f) motion, "whichever is earlier." *Id.* Because "[a] complaint is a pleading to which a responsive pleading is required[,]" a party under Fed. R. Civ. P. 15(a)(1)(B) "has an absolute right to amend its complaint at any time from the moment the complaint is filed until [twenty-one] days after the earlier of the filing of a responsive pleading or a [specified] motion under Rule 12[.]" *Villery v. Dist. of Columbia*, 277 F.R.D. 218, 219 (D.D.C. 2011).

withdrew her class action allegations. She continues to assert the N.Y. Gen. Bus. Law § 349 claim she had previously brought on behalf of the class, but now only in her individual capacity. On April 8, 2020, Quest moved to dismiss the FAC. On April 28, 2020, Defendants Beacon Center and Dr. Webster filed a joint motion to dismiss.

## II.    Allegations in the FAC.

Plaintiff is a resident of Buffalo, New York. Quest is a corporation authorized and existing under Pennsylvania law. Beacon Center is a for-profit outpatient alcoholism and substance abuse treatment facility located in Buffalo, New York. Dr. Webster is Beacon Center's Medical Director and is, upon information and belief, a resident of Erie County, New York.

Between 2012 and 2016, Plaintiff alleges she suffered a series of personal tragedies which caused her to become depressed and abuse alcohol. In April of 2016, she was arrested and charged with two misdemeanor DWIs. Thereafter, she entered a plea agreement with respect to one DWI, and with regard to the other, she chose to participate in a state Drug Court program. Pursuant to the program, she was required to enter drug treatment and complete a rehabilitation program certified by the New York State Office of Alcohol and Substance Abuse Services; submit to random alcohol and drug testing; and attend Drug Court. Pursuant to the Drug Court's protocol, her failure to meet these requirements would allegedly constitute an admission of guilt to her second DWI and could lead to her incarceration.

On May 26, 2017, Beacon Center evaluated Plaintiff and, following Beacon Center's recommendation, Plaintiff entered its rehabilitation program. On June 2, 2017, Plaintiff began counseling and random drug and alcohol testing. Beacon Center selected the random testing protocol and coordinated testing, and Quest performed the testing. As Beacon Center's Medical Director, Dr. Webster supervised Plaintiff's rehabilitation care, which included approving the testing protocol and reviewing the testing results. Plaintiff's insurance company paid Beacon Center for these services.

Between June of 2017 and mid-August of 2017, Beacon Center regularly collected Plaintiff's urine, which Quest tested using a "pain management clinical screen" for ten

3

classes of medication (thirty-nine drugs total). (Doc. 11 at 3, ¶ 11) (internal quotation marks omitted). No drugs or alcohol were found in Plaintiff's urine during this time period. Plaintiff alleges that, upon information and belief, Quest contracted with Beacon Center to perform Test Code 20776, defined as "Pain Management Drug Screen Profile with Confirmation, Urine"; that Quest represented to Beacon Center that this code was appropriate for forensic purposes; and that Quest included "an automatic confirmation of every drug tested at an additional charge." *Id.* at 3-4, ¶¶ 12, 14 (internal quotation marks omitted). According to the FAC, Quest has publicly stated the methodology for Test Code 20776 is "GC/MS, EMIT[,]" or gas chromatography/mass spectrometry, which is "a method of identifying particular molecules based both on their molecular weight and the molecular weight of ions created when energy is applied to the sample." *Id.* at 4, ¶ 16 (internal quotation marks omitted). Quest has also allegedly publicly stated that "all screening results" under Test Code 20776 "are confirmed automatically at an additional charge." *Id.* at ¶ 17 (quotation marks omitted).

On August 15, 2017, Beacon Center forwarded to Quest a sample of Plaintiff's urine obtained during a group counseling session for testing under Test Code 20776. The next day, on August 16, 2017, Plaintiff provided another urine sample to Beacon Center during an individual counseling session which it forwarded to Quest for testing under Test Code 20776. A third urine sample taken from Plaintiff on August 17, 2017 during a group counseling session was again forwarded to Quest for the same testing. The urine samples taken on August 15, 2017 and August 17, 2017 were negative for all substances tested. However, Quest reported to Beacon Center that the August 16, 2017 urine sample tested positive for a "minute amount of the drug gabapentin[,]" an anticonvulsant medication used to treat epilepsy and chronic nerve pain. *Id.* at 5, ¶ 22.

Plaintiff asserts that she did not ingest gabapentin and that Quest falsely reported to her doctor and Beacon Center that the positive result for gabapentin was "'confirmed[,]'[] meaning that this was not a mere screening result but a confirmation test had been conducted by Quest to confirm the presence of gabapentin in [P]laintiff's August 16, 2017 urine sample by GC/MS testing." *Id.* at ¶ 25. Beacon Center's employee

4

then allegedly reported to the Drug Court that Plaintiff's urine sample was "confirmed" positive for gabapentin, that there were no known substances that cause false positive results for gabapentin, and that the positive test result was reliable. (Doc. 11 at 5, ¶¶ 25-26.)

Plaintiff asserts that Dr. Webster reviewed and signed these results but did not meet with her "to discuss the 'positive' drug test for gabapentin to obtain the complete clinical picture," did not determine if Plaintiff intentionally or accidentally ingested gabapentin, and did not evaluate "whether it was scientifically plausible for her to have tested positive for gabapentin on August 16 and test negative for this drug on August 15 and August 17." *Id.* at 6, ¶ 33.

Because Beacon Center reported to the Drug Court that Plaintiff's August 16, 2017 urine sample was confirmed as positive for gabapentin, Plaintiff alleges that she was publicly humiliated by the presiding judge of the Drug Court, who questioned her candor when she swore she had never taken or heard of gabapentin. The Drug Court judge purportedly told Plaintiff that if she tested positive for gabapentin or any other drug again, she would "be immediately incarcerated" for one week. *Id.* at 7, ¶ 34. Plaintiff's graduation from Beacon Center's rehabilitation program was postponed, and her mandatory treatment period was extended.

Following the August 16, 2017 positive test, Plaintiff requested that her future urine samples be retained so that repeat testing could be performed should her urine test positive again. Beacon Center's employee allegedly agreed to this request. Plaintiff alleges she suffered severe emotional distress and anxiety regarding the possibility "that another false positive test would be reported causing her to lose her freedom and forcing a conviction on her misdemeanor DWI charge." *Id.* at ¶ 36.

On September 19, 2017, Plaintiff submitted a urine sample to Beacon Center during a group counseling session, which was sent to Quest for analysis under Test Code 20776. She provided another urine sample the next day during an individual counseling session. On September 28, 2017, the day she was scheduled to graduate from Beacon Center's rehabilitation program, Plaintiff learned that her September 19, 2017 urine

sample was reported to the Drug Court as testing positive for "an extremely small amount of gabapentin." *Id.* at 8, ¶ 40. Quest allegedly stated this test result was confirmed by GC/MS testing. When Plaintiff asked that her September 19, 2017 sample be tested again, Beacon Center's representative informed her that Quest had discarded it.

After requesting documentation substantiating her test results from Quest, which Quest initially "refused" to provide, *id.* at 9, ¶ 46, Plaintiff discovered that Quest conducted a drug screen rather than a confirmation test and "used different equipment than advertised[.]" *Id.* at ¶ 47. On that basis, Plaintiff asserts that Quest should not have reported positive tests for gabapentin.

Although Quest performed a single test for each urine sample, Plaintiff contends Quest billed her insurer $135.20 for the initial screen and $43.10 for confirmation testing for each drug that was a part of a single test panel. Plaintiff thus alleges that Quest billed her for confirmation testing it never performed.

Following her September 19, 2017 positive test result, Plaintiff retained counsel and paid for additional urine testing for backup testing on any day she provided Beacon Center with a urine sample. Plaintiff asserts that her representatives attempted to obtain documentation regarding Plaintiff's urine testing but that Quest's agents and employees "intentionally and deliberately delayed, misrepresented facts[,] and refused to produce documentation in a timely fashion[,] hindering [her] ability to establish her innocence." (Doc. 11 at 11, ¶ 57.) Due to Quest's alleged withholding of information from Plaintiff's attorneys, as well as Beacon Center's alleged misrepresentations that the positive urine tests were reliable, the Drug Court presiding judge "refused to consider the available scientific evidence submitted that the test results were inaccurate" and gave Plaintiff the option of remaining in the Drug Court program if she spent a week in jail or re-started the program. *Id.* at ¶ 58.

Plaintiff withdrew from the Drug Court and faced "sentencing for her DWI charge before the same judge who believed she had lied on two separate occasions in open court about her gabapentin use." *Id.* at 11-12, ¶ 59. She met with a probation officer who recommended in a report to Drug Court that Plaintiff be required to restart the Drug

Court program and be incarcerated in the Erie County Holding Center for one week. Plaintiff alleges that she suffered anxiety and emotional trauma from knowing the probation officer's report would be presented to the Drug Court's presiding judge. Prior to Plaintiff's sentencing, the presiding judge informed Plaintiff's counsel that he was considering a sentence of thirty days in jail and three years of probation, causing Plaintiff "additional anxiety and emotional trauma." *Id.* at 12, ¶ 61.

At her January 23, 2018 sentencing hearing, the presiding judge allegedly publicly humiliated Plaintiff for abusing gabapentin and failing to admit it but permitted Plaintiff to restart the Drug Court program provided she pay for her own drug testing. He further ordered that Plaintiff be immediately incarcerated for a minimum of one week if she tested positive again and without the opportunity to challenge the validity of the test results. On November 3, 2017, approximately one month after she would have completed Beacon Center's treatment program had her urine samples not tested positive for gabapentin, Plaintiff completed her treatment at Beacon Center.

Plaintiff asserts that Quest charged Plaintiff $566.20 for each urine sample tested, including charges for alleged confirmation testing that was never performed. In January of 2018, Plaintiff reentered the Drug Court program. Although Beacon Center continued testing her urine, it used a different laboratory, which charged Plaintiff only $35.00 per test. Plaintiff completed the Drug Court program on September 25, 2018, approximately four months after she would have completed it absent the allegedly false positive drug tests.

In her FAC, Plaintiff asserts four causes of action: (1) common-law negligence against Beacon Center (Count I); (2) common-law professional negligence or medical malpractice against Dr. Webster (Count II); (3) common-law negligence against Quest (Count III); and (4) fraud against Quest as well as a violation of N.Y. Gen. Bus. Law § 349. (Count IV). Plaintiff seeks compensatory, exemplary, and consequential damages with regard to Counts I through III in addition to attorneys' fees and costs. For the fraud and N.Y. Gen. Bus. Law § 349 claim set forth in Count IV, Plaintiff alleges that she is entitled to actual damages, treble damages, and injunctive relief.

### III.   Conclusions of Law and Analysis.

Where "CAFA anchored jurisdiction at the time of removal[,]" the court "may retain jurisdiction over state-law claims with minimally diverse parties where the class-action component of the complaint is dismissed after the case is removed to federal court." *F5 Cap. v. Pappas*, 856 F.3d 61, 76 (2d Cir. 2017); *see also In Touch Concepts, Inc. v. Cellco P'ship*, 788 F.3d 98, 102 (2d Cir. 2015) ("[J]urisdiction under CAFA is secure even though, after removal, the plaintiffs amended their complaint to eliminate the class allegations") (citation and internal quotation marks omitted). Plaintiff concedes that the court retains subject matter jurisdiction over her remaining state law claims but argues that the court should decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) because she has withdrawn the class action allegations providing a basis for federal jurisdiction; state law claims now substantially predominate; her claims give rise to novel and complex issues of state law; and the balance of judicial economy, convenience, fairness, and comity favor remand.

Defendants oppose remand, arguing that Plaintiff's claims do not raise novel and complex issues of state law; that Plaintiff seeks remand to limit discovery; that the balance of interests do not weigh in favor of remand; and that it is not more convenient for Quest, a Pennsylvania resident, to defend this action in state court.

"[T]he exercise of supplemental jurisdiction is left to the discretion of the district court[.]" *Ametex Fabrics, Inc. v. Just In Materials, Inc.*, 140 F.3d 101, 105 (2d Cir. 1998) (alteration in original) (quoting *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994)); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("It has consistently been recognized that pendent jurisdiction is a doctrine of discretion[.]"). Under 28 U.S.C. § 1367(c), the court "may decline to exercise supplemental jurisdiction" and in doing so should consider whether: (1) "the claim raises a novel or complex issue of State law"; (2) the state law claim "substantially predominates" over federal claims; (3) the court has "dismissed all claims over which it has original jurisdiction"; or (4) "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." In determining whether to exercise supplemental jurisdiction, the court must also

consider a "balance of factors" including "judicial economy, convenience, fairness, and comity[.]" *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also Purgess*, 33 F.3d at 138 ("[T]he discretion implicit in the word 'may' in subdivision (c) of § 1367 permits the district court to weigh and balance several factors, including considerations of judicial economy, convenience, and fairness to litigants.").

In "the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (citation omitted) (alteration in original); *see also Cohill*, 484 U.S. at 351 ("When the single federal-law claim in the action was eliminated at an early stage of the litigation, the District Court had a powerful reason to choose not to continue to exercise jurisdiction."); *Gibbs*, 383 U.S. at 726 ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.") (footnote omitted). For this reason, "courts in th[e] [Second] Circuit generally grant motions to remand where, as here, a plaintiff voluntarily dismisses all of its federal claims prior to the beginning of discovery." *Nix v. Office of Comm'r of Baseball*, 2017 WL 2889503, at *4 (S.D.N.Y. July 6, 2017); *see also Goonewardena v. AMR Corp.*, 2008 WL 5049904, at *3 (E.D.N.Y. Nov. 25, 2008) (granting remand where plaintiff "withdrew his single federal claim very early on [in] this litigation"); *Arthur Glick Truck Sales, Inc. v. H.O. Penn Mach. Co.*, 332 F. Supp. 2d 584, 586 (S.D.N.Y. 2004) (remanding where plaintiffs "abandoned their sole federal claim before the Court decided" motions for a preliminary injunction and to dismiss).

Defendants contend that the exceptions under § 1367(c)(3) do not favor remand because the court retains jurisdiction over Plaintiff's state law claims under CAFA. Although the Second Circuit has held that district courts do not "lose jurisdiction even though the plaintiff amended its complaint to eliminate the class claim after removal[,]" *F5 Cap.*, 856 F.3d at 76, it has never held that withdrawal of class action allegations *compels* the federal court to retain jurisdiction over related state claims. A federal court therefore has the discretion to either remand or exercise supplemental jurisdiction

notwithstanding the dismissal of the CAFA-triggering claim.[2] *See Oskar v. IDS Prop. Cas. Ins. Co.*, 2011 WL 1103905, at *7 (E.D.N.Y. Mar. 23, 2011) (applying § 1367(c)(3) to remand state law claims because "the basis for federal jurisdiction in this matter rests on" CAFA and "all class claims have been dismissed"); *Giannini v. Schering-Plough Corp.*, 2007 WL 1839789, at *3 (N.D. Cal. June 26, 2007) (holding the court's "jurisdiction was not automatically divested when the class action claims were dismissed," but that "it does not follow that remand is impermissible" where "diversity jurisdiction was only established under the minimal diversity requirements for class actions pursuant to CAFA").

Having dismissed her class action claims, Plaintiff's state law claims not only predominate, they are the sole claims pending before the court. Each of these remaining claims raises novel questions regarding whether common-law judicial immunity and litigation privileges protect an independent drug testing agency, its affiliates, and employees from suit on the grounds that they acted as arms of a Drug Court. *Compare Landon v. Kroll Lab'y Specialists, Inc.*, 999 N.E.2d 1121, 1124-25 (N.Y. 2013) (holding drug testing company "had a duty to the test subject to perform his drug test in keeping with relevant professional standards and that the existence of its contract with the County does not immunize defendant laboratory"), *with Mosher-Simons v. Cty. of Allegany*, 783 N.E.2d 509, 513 (N.Y. 2002) (holding county that authored court-ordered home study report given to family court in child custody proceeding was "cloaked with judicial immunity" as part of "the antecedent fact-gathering process necessary for the court to reach [its] placement decision"). These are issues of New York law, and the New York

---

[2] The district court in *In Touch Concepts, Inc. v. Cellco P'ship*, 949 F. Supp. 2d 447, 463 (S.D.N.Y. 2013) found 28 U.S.C. § 1367(c)(3) did not apply because the plaintiff's "CAFA claims, while no longer asserting class allegations, technically remain pending as individual claims." *Id.* This statement is *dicta* and was not affirmed by the Second Circuit on appeal. On the contrary, the Second Circuit refused to "conclude that the district courts, on finding that a case cannot proceed as a class action [following proper removal], must adjudicate state law claims rather than remand them to state court" and has advised that courts "can also, of course, dismiss [the claims] without prejudice for consideration in state courts." *F5 Cap. v. Pappas*, 856 F.3d 61, 77 n.14 (2d Cir. 2017).

state courts should decide them. *See Gibbs*, 383 U.S. at 726 ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.") (footnote omitted).

Regarding whether the balance of interests favor remand, the court has not issued any scheduling orders, no discovery has taken place, and the court has not decided any dispositive motions. The case is therefore in a nascent stage which favors remand. *See TPTCC NY, Inc. v. Radiation Therapy Servs., Inc.*, 453 F. App'x 105, 107 (2d Cir. 2011) (finding district court should not have exercised supplemental jurisdiction when the "action was in its infancy at the time of the District Court's decision" and the parties "had yet to produce any documents, confer to resolve issues regarding the scope of document discovery, or notice a single deposition"); *Kolari*, 455 F.3d at 123 (holding district court erred in exercising jurisdiction over state law claims where plaintiffs' "federal-law claims were eliminated . . . prior to the investment of significant judicial resources") (footnote omitted).

The federal and state courthouses are both located in Buffalo, New York, and there is consequently no greater hardship or inconvenience to any party if remand is ordered. *See Nix*, 2017 WL 2889503, at *4 ("[T]he [c]ourt 'can discern no extraordinary inconvenience or inequity occasioned by permitting' Plaintiffs to bring their claims across the street in the New York State Supreme Court") (quoting *Kolari*, 455 F.3d at 123). Although Defendants argue that litigating in New York Supreme Court would be inconvenient because it has suspended activity due to the COVID-19 pandemic and does not have a universal docketing system, the COVID-19 pandemic arguably affects both state and federal courts equally and this court has recognized that the state courts may afford a more expeditious resolution. *See Maraschiello v. City of Buffalo Police Dep't*, 2011 WL 7395095, at *14 (W.D.N.Y. Sept. 13, 2011), *report and recommendation adopted*, 2012 WL 527626 (W.D.N.Y. Feb. 16, 2012), *aff'd*, 709 F.3d 87 (2d Cir. 2013) ("[T]he Western District of New York's very heavy caseload is one more reason to decline exercising supplemental jurisdiction over common state claims that will likely

11

reach trial earlier in the state court.").

On balance, principles of judicial efficiency, convenience, comity, and fairness favor remand. *See Chapman v. Crane Co.*, 694 F. App'x 825, 829 (2d Cir. 2017) (affirming remand when the plaintiffs "abandoned their claims giving rise to original jurisdiction; it was still an early stage of the proceedings and discovery was not complete; no dispositive motions had been decided; and interests of comity militated in favor of remand because the case was predominately a matter of state law, potentially implicating unsettled questions of state law"); *Klein & Co. Futures, Inc. v. Bd. of Trade of City of N.Y.*, 464 F.3d 255, 263 n.5 (2d Cir. 2006) (holding district court did not abuse its discretion in declining to exercise supplemental jurisdiction over state law claims once federal claim was dismissed because "th[e] case was in the early stages of litigation[,] [t]here had been no significant activity aside from the consideration of motions to dismiss[,]" and dismissal would "procure for the parties 'a surer-footed reading of applicable law' with regard to the eight remaining state law claims") (emphasis omitted) (quoting *Gibbs*, 383 U.S. at 726). The court therefore declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, GRANTS Plaintiff's motion to remand, and hereby REMANDS this case and the pending motions to dismiss to New York Supreme Court, Erie County.

## CONCLUSION

For the reasons stated above, the court GRANTS Plaintiff's motion to remand to state court (Doc. 13) and hereby REMANDS this case and the pending motions to dismiss (Docs. 12 & 19) to New York Supreme Court, Erie County.

SO ORDERED.

Dated this _29^th_ day of October, 2020.

Christina Reiss, District Judge
United States District Court